UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 16-11796-GAO

KRYSTLE M. TENAGLIA,
Plaintiff,

v.

NANCY A. BERRYHILL[1],
Defendant.

OPINION AND ORDER
September 28, 2017

O'TOOLE, D.J.

The plaintiff, Krystle M. Tenaglia, appeals the denial of her application for Social Security Disability Benefits ("DIB") and Supplemental Security Income ("SSI") by the Commissioner of Social Security ("Commissioner"). Pending before this Court are Tenaglia's Motion to Reverse or Remand the Decision of the Commissioner (dkt. no. 13) and the Commissioner's Motion to Affirm the Commissioner's Decision (dkt. no. 17). After consideration of the administrative record and the parties' memoranda, this Court now affirms the Commissioner's decision because it is supported by substantial evidence in the record and no error of law was committed.

## I.   Procedural History

Tenaglia filed applications for a period of disability, DIB, and SSI on April 4, 2013, alleging disability beginning on August 29, 2012. (Administrative Tr. 105 [hereinafter R.]; see id.

---

[1] Nancy A. Berryhill is now the acting commissioner of the Social Security Administration. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Berryhill is automatically substituted as the defendant in this action.

at 192–204.)[2] The plaintiff's claims were denied initially and upon reconsideration. (Id. at 56–75, 78–101.) Tenaglia then testified at a hearing before an Administrative Law Judge ("ALJ") on May 7, 2015. (Id. at 14–53.) On July 24, 2015, the ALJ issued his decision finding that Tenaglia was not disabled, (id. at 105–21), and the Appeals Council subsequently denied Tenaglia's request for review of the ALJ's decision, (id. at 1–5). The denial rendered the ALJ's decision the final decision of the Commissioner, making the case ripe for review by this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Discussion

Review of the Commissioner's decision is limited "to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). A court will uphold an ALJ's decision when it is supported by substantial evidence, which exists where "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion," Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (citation and internal quotation marks omitted), even if there is also evidence that could support an alternate conclusion, Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (citing Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981)). The court is required to do this because the responsibility for weighing conflicting evidence and resolving issues of credibility belongs to the Commissioner and her designee, the ALJ. Seavey v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2010) (citation omitted).

---

[2] The administrative record has been filed electronically. The record is in its original form, with the page numbers in the lower right-hand corner of each page. Citations to the record are to the pages as originally numbered, rather than to numbering supplied by the electronic docket.

On appeal, Tenaglia argues that the ALJ erred by finding that her substance abuse was a contributing factor material to the determination of disability and that she would not be disabled in the absence of the substance abuse. She also challenges the ALJ's determination of her residual functional capacity ("RFC").

The full and extensive administrative record is filed on the docket in this case, as is the written decision of the ALJ. Thus, there is no reason to restate here the details of Tenaglia's medical history or the application process except as necessary to discuss the specific objections made to the Commissioner's decision.

> A. Substantial evidence supports the ALJ's finding that the plaintiff's alcoholism was a contributing factor material to the determination of disability

In cases where a claimant suffers from alcoholism or drug addiction, it must be determined whether the substance abuse is a material contributing factor to the disability. If it is, the claimant cannot be deemed disabled for DIB or SSI purposes. First, the ALJ must proceed through the sequential five-step process described in 20 C.F.R. § 416.920(a)(4)[3] to decide whether the claimant is disabled after considering all of her medical impairments, including alcoholism or drug addiction. If the ALJ determines that the claimant is disabled after this initial review, the ALJ repeats the five-step analysis to "determine whether the claimant would continue to be disabled if he or she stopped using drugs or alcohol." SSR 13-2p, 2013 WL 621536, at *2 (February 20, 2013). The purpose of this additional analysis is to resolve whether the claimant's drug addiction or alcoholism is a "contributing factor material to the determination of disability." 20 C.F.R. § 404.1535. This is significant because "[a]n individual shall not be considered to be disabled . . . if

---

[3] Although separate statutes and regulations exist for DIB and SSI claims, the legal standards are essentially the same. Citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.

3

alcoholism or drug addiction would . . . be a contributing factor to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).

In the ALJ's initial review, he found that the plaintiff was disabled because her mental impairments, including her alcoholism, met listing sections 12.04, 12.06, and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 108.) Specifically, the ALJ determined that Tenaglia had marked restrictions both in activities of daily living and in social functioning when she was abusing alcohol. (Id. at 108–09). When a claimant meets at least two "paragraph B" criteria with marked restrictions or difficulties she is considered disabled without consideration of age, education, or work experience. See 20 C.F.R. § 404.1520(d). However, the ALJ also concluded that if the plaintiff stopped her alcohol abuse, she would not have an impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1 because her limitations would not satisfy any "paragraph B" criteria. (R. at 109–11.)

He further concluded that even if she stopped abusing alcohol, she could not perform her past work because of her anxiety and other mental health symptoms, (id. at 114–15), but that there were other jobs available in significant numbers in the national economy that she could perform based on her age, education, work experience, and RFC, (id. at 115). In assessing what Tenaglia's RFC would be in the absence of substance abuse, the ALJ determined that her mental impairments were not as limiting as alleged because during periods of sobriety Tenaglia was "full[y] oriented and alert, with normal mood and affect, and normal concentration." (Id. at 113.) The ALJ supported this conclusion by citing specific treatment notes in the record that address Tenaglia's improvements while she is sober. (Id.) The ALJ concluded that the plaintiff's alcoholism "is a contributing factor material to the determination of disability because the claimant would not be

disabled if she stopped the substance use." (Id. at 115 (citing 20 C.F.R. §§ 404.1520(g), 404.1535).)

Tenaglia argues that the ALJ's conclusion on this issue was faulty because she continued to experience "psychiatric episodes" despite having been sober during the relevant time period except for "three one-day relapses since July, 2013, a 2 year period before the decision." (Mem. in Supp. of Pl.'s Mot. to Reverse or Remand the Decision of the Commissioner of the Social Security Administration, 2 (dkt. no. 14).) Her argument is unpersuasive. The record contains a number of treatment notes in which Tenaglia reports relapses and alcohol use exceeding the "three one-day relapses since July 2013" that the plaintiff claims in her brief. (See, e.g., R. at 612, 636, 640, 646/655, 656, 659, 672/673, 691.)

There is also substantial evidence in the record that supports the ALJ's conclusion that during periods of sobriety Tenaglia reported decreased feelings of depression and anxiety. (Id. at 59, 63, 344, 566, 568, 570, 636, 640, 695.) This evidence supports the ALJ's determination that "[w]hen [Tenaglia] presents for routine treatment when not abusing substances, she is consistently reported to be fully oriented and alert, with normal mood and affect, and normal concentration." (Id. at 113.) In his decision, the ALJ specifically discussed several periods of sobriety in which Tenaglia reported decreased anxiety, depression, or both. (Id. at 113.)

Tenaglia also argues that the ALJ ignored the fact that two state doctors from the Disability Determination Services ("DDS") did not find that her alcoholism contributed materially to a finding of disability. The argument is a bit of misdirection. The two DDS physicians, Dr. Keuthen and Dr. Weissberg, did not determine that alcohol was material to a finding of disability because they did not find that Tenaglia was disabled at all, even when her alcoholism was included in the analysis. (Id. at 65, 89.)

5

Tenaglia alleges that the ALJ failed to consider her testimony on how her anxiety limits her ability to leave home. In particular, Tenaglia testified in her hearing before the ALJ that she vomits every morning because of her anxiety, (id. at 27–28), and it also makes it difficult for her to be on time for appointments, (id. at 30).

Assessments of a claimant's credibility are the responsibility of the ALJ. Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965) (citation omitted). When reviewing an ALJ's credibility determination, the court defers to the ALJ because he "observed the claimant, evaluated [her] demeanor, and considered how that testimony fit in with the rest of the evidence." Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987). However, the ALJ's credibility determination "must be supported by substantial evidence and the ALJ must make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]." Jones v. Bowen, CIV. A. No. 87-2081-WF, 1989 WL 18889, at *6 (D. Mass Feb. 21, 1989) (quoting Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (alteration in original).

The ALJ determined that Tengalia's testimony was not entirely credible because, as noted above, treatment notes in the record indicate that she experiences only minimal to moderate anxiety when she is sober. (R. at 112–113.) "When [Tenaglia] presents for routine treatment when not abusing substances, she is consistently reported to be fully oriented and alert, with normal mood and affect, and normal concentration." (Id. at 113.)

Before proceeding to step four in the sequential process, the ALJ assessed the claimant's RFC based on the evidence in the record. He determined that:

> If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs, kneel, crouch, crawl, balance or stoop; can occasionally operate foot controls with her lower left extremity; cannot be exposed to

> extreme cold, heat, wetness or humidity, excessive vibration, or concentrated fumes, odors, dust, gasses, poorly ventilated areas, or concentrated chemicals; is limited to performing simple, unskilled work, in a low stress job, with only occasional decisionmaking, only occasional changes in work setting, no fast paced production requirements, and only occasional contact with the public or coworkers.

(R. at 111.)

The plaintiff challenges the ALJ's RFC determination on several grounds, including his claimed failure to address the DDS doctors' concurrent opinions that Tenaglia may be expected to miss one to three work days a month. She argues that this degree of regular absenteeism would preclude her from full time employment work and thus undercut the ALJ's RFC conclusions.

Although the plaintiff is correct in saying that the ALJ never directly addressed this particular part of the DDS doctors' opinion, this argument is unpersuasive. First, it is important to note that the two DDS' opinions found that Tenaglia was not disabled, even when considering her alcoholism. This means that these doctors never considered what the plaintiff's limitations would be if she ceased using alcohol. In contrast, the ALJ's RFC determination was based on his projections of what Tenaglia's level of impairment would be if she were to stop using alcohol. Moreover, the reviewing doctors' opinions were not as emphatic as the plaintiff suggests. The opinions both state that Tenaglia "*may* miss 1-3 days of work monthly given her avoidance of leaving home." (Id. at 62, 86 (emphasis added).) In any event, unlike the ALJ, the state agency doctors were apparently basing their estimates on assumptions that *included* Tenaglia's alcoholism.

Finally, while the ALJ did not directly explain why he did not adopt the estimate that Tenaglia would miss one to three days of work each month, he did address the issue of absenteeism indirectly. He noted that "[w]hile her treatment notes support her testimony that she experiences significant anxiety with panic symptoms in the morning when preparing to leave home, the claimant has reported that she can generally control these symptoms with breathing exercises."

7

(Id. at 113 (citing id. at 592).) He also noted that Tenaglia is able to make it to her appointments on time by taking taxis, which allow her to more time in the morning to deal with anxiety that arises when leaving the house. (Id. at 112; see id. at 24.) Additionally, the ALJ determined that Tenaglia's treatment notes indicated that when she is sober she experiences decreased anxiety and depression symptoms.

In light of these findings, it is apparent that the ALJ did not conclude that Tenaglia would be regularly absent from work when she is sober. Therefore, even if the ALJ were required to directly discuss the reasons why he did not follow the DDS doctors' opinions, that would not change his conclusion because he had already addressed the issue of absenteeism and made findings supported by substantial evidence that rejected the notion that Tenaglia would repeatedly be absent from work when sober. See Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000) (ruling that "remand is not essential if it will amount to no more than an empty exercise").

Tenaglia also asserts that the ALJ erred by not including in his RFC assessment the limitation that she would require an isolated work setting, as suggested by the DDS doctors' opinions. (R. at 62, 86.) This appears to be a semantic quarrel. The ALJ's RFC determination did explicitly include the essentially equivalent limitation that Tenaglia could work in a job where she had "only occasional contact with the public or coworkers." (Id. at 111.)

Finally, Tenaglia's therapist, Paul Carlberg, wrote a letter opining that the plaintiff's symptoms made "sustained competitive employment nearly impossible." (Id. at 697.) Tenaglia argues that the ALJ erred by not giving this opinion letter any weight at all. The ALJ determined that the Carlberg opinion was "not relevant to a determination of the claimant's [RFC] in the absence of substance abuse." (Id. at 114.) This was a proper conclusion. Carlberg's opinion would only be to an assessment of disability when consideration of her alcohol abuse was included.

However, the opinion is not relevant to the question of whether or not Tenaglia's impairments would persist if she were to stop abusing alcohol. This letter does not express an opinion whether Tenaglia's impairments would persist if she stopped using alcohol. Indeed, such an opinion would seem to be at odds with some of Carlberg's counseling notes. The ALJ did not err by giving no weight to Carlberg's opinion in the materiality analysis.

    B.    <u>Concentration and pace-based restrictions</u>

Tenaglia also challenges the ALJ's RFC determination because it does not adequately address her concentration or pace-based restrictions. In support of this argument, the plaintiff cites <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015), where the court noted that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" <u>Id.</u> at 638 (citing <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1180 (11th Cir. 2011)). Rather, a person's "ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." <u>Id.</u>

This argument is unpersuasive because the determined RFC clearly includes more limitations than merely limiting Tenaglia to simple, routine work, or unskilled work. The relevant portion of the RFC on this point is that Tenaglia "is limited to performing simple, unskilled work, *in a low stress job, with only occasional decisionmaking, only occasional changes in work setting, no fast paced production requirements, and only occasional contact with the public or coworkers*." (R. at 111 (emphasis added).) In reaching this determination, the ALJ stated that he relied on the two DDS doctors' opinions. (<u>Id.</u> at 114.) This aspect of the RFC expressed limitations that specifically addressed Tenaglia's work environment needs. The two DDS doctors both

9

recommended that Tenaglia be placed in a "more isolative setting as she could be distracted around others," (id. at 62), and the RFC adequately addressed the plaintiff's pace and concentration limits.

### III. Conclusion

For all the reasons stated herein, Tenaglia's Motion to Reverse or Remand the Decision of the Commissioner (dkt. no. 13) is DENIED, and the Commissioner's Motion to Affirm the Commissioner's Decision (dkt. no. 17) is GRANTED.

The decision of the Commissioner is AFFIRMED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.<br>
United States District Judge